Ja7drivp

                          Plea

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,              New York, N.Y.

4              v.                          19 Cr. 0529(PAE)

5   KELLY RIVAS,

6                  Defendant.

7   ------------------------------x

8
                                          October 7, 2019
9                                         3:59 p.m.

10
    Before:
11
                      HON. PAUL A. ENGELMAYER,
12
                                          District Judge
13

14                         APPEARANCES

15  GEOFFREY S. BERMAN
         United States Attorney for the
16       Southern District of New York
    BY:  DANIELLE SASSOON
17       Assistant United States Attorney

18  ANGUS JAMES BELL
         Attorney for Defendant
19

20         – also present –

21  Reut Baer, Government Intern

22  Spanish Language
    Interpreters:  Paula Gold
23                 Gunilla Medina

24

25

Ja7drivp
                              Plea

1          THE CLERK:  In the matter of the United States against

2   Kelly Rivas, counsel, state your appearance for the record,

3   please.

4          MS. SASSOON:  Good afternoon, your Honor.  Danielle

5   Sassoon for the government, and I'm joined at counsel table by

6   Reut Baer, an intern in our office.

7          THE COURT:  Very good.  Good afternoon, Ms. Sassoon,

8   and good afternoon, Ms. Baer.

9          MR. BELL:  Good afternoon, Judge.  James Bell for Ms.

10  Rivas.

11         THE COURT:  Very good.  Good afternoon, Mr. Bell.  And

12  good afternoon, of course, to you, Ms. Rivas.

13         And I will note for the record that Ms. Rivas is

14  assisted today by a court-certified Spanish translator.

15         Ms. Rivas, if at any point you don't understand what

16  is being said to you by the translator, please wave your hand,

17  raise your hand, so that I can know that immediately.  Will you

18  agree to do that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  OK.  I understand, Mr. Bell, that we are

21  here for a change of plea proceeding, is that correct?

22         MR. BELL:  Yes.

23         THE COURT:  All right.  And I understand that your

24  client intends today to plead guilty to Count One of the

25  Indictment in this case, 19 Crim. 529, is that right?

Plea

1          MR. BELL:  Yes, a single Indictment, correct.

2          THE COURT:  Right.

3          And, Ms. Rivas, is that correct, that you intend today

4     to plead guilty to Count One of the Indictment?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  All right.  And the Indictment -- there is

7     a signed plea agreement which counsel have handed up.  I am

8     going to mark it as Government Exhibit 1.  Later in this

9     proceeding, I will ask counsel and the defendant about the

10    terms of that agreement.

11         Before we proceed, though, I had a question myself and

12    I thought it worth airing it before we get going.  I read the

13    plea agreement, and it tabulates a guideline range of 33 to 41

14    months based on a total offense level of 20 and a criminal

15    history category of I.  Both parties agree not to move for a

16    departure upward or downward.  Both parties reserve the right

17    to move for a variance upward or downward.

18         Ms. Sassoon, I reread the transcript of the late

19    August hearing at which you told me in graphic terms about the

20    nature of the case, and I wanted to make sure that Ms. Rivas

21    was on notice as to your intentions here.  Given the dramatic

22    quality of the allegations aired about Ms. Rivas at the time of

23    the bail hearing and the initial conference, it appeared to me

24    not implausible that the government would be actively

25    considering an upward variance here.  And I am not suggesting

Ja7drivp
Plea

1    that you should do that or not, but given the crime that is the

2    subject of the guilty plea, it doesn't appear by its elements

3    necessarily to capture some of the conduct that you proffered

4    to me.  I want to make sure that Ms. Rivas is going into this

5    eyes open.

6         MS. SASSOON:  Yes, your Honor.  Given the nature of

7    the organization involved, on its behalf Ms. Rivas was

8    extorting dues, it is possible that the government will seek a

9    sentence at the high end of the guidelines or above the

10   guidelines.  No decision has been made yet on what sentence

11   we'll be seeking.  I have not consulted on that question with

12   any supervisor who would have the authority to approve or not

13   approve such a request.  I haven't made such a request at this

14   time, but it is possible and it is permitted by the plea

15   agreement.

16        THE COURT:  OK.  Mr. Bell, over to you.  I want to

17   make sure that your client is on notice of the sentencing

18   outcomes or potential outcomes here.  It is certainly the case,

19   as Ms. Sassoon points out, that the plea agreement preserves

20   the right to move for an upward variance on the government's

21   part, which preserves the right for the defense to move for a

22   downward variance.  Given the facts of the case as they were

23   proffered to me at the initial conference, I don't think I am

24   going out on a limb here to say that this is a case in which it

25   is plausible to imagine the government on its motion or the

Ja7drivp

Plea

1   Court sua sponte considering whether an upward variance was

2   merited.  The facts at least as proffered, if they turn out to

3   be stipulated to or established in the sentencing process,

4   arguably are not ones that are captured by the guideline

5   provisions here.  I want to make sure you and your client have

6   discussed that and understand that that is a risk here.

7        MR. BELL:  Judge, in any matter to which I speak for

8   my client, I always advise my client that it is always up to

9   the Court to make the determination of what the actual sentence

10  is.  I also will go through the 3553 factors and make sure that

11  clients understand that there are mitigating and also there are

12  factors that do warrant an upward variance in any case.  But

13  particularly in this particular case, I have had conversations

14  with the government and with my client regarding what

15  particularly she is pleading guilty to.  In fact, as I

16  understand it, what she is pleading guilty to is extorting one

17  person -- a person -- and that the other allegations we will

18  have to deal with, you know, once we get to that portion of the

19  PSR and whether or not we are objecting and that sort of thing.

20       But, yes, for the purpose of this, Judge, yes, I have

21  had extensive conversations with my client regarding what the

22  possibilities would be in light of the fact that she has never

23  been convicted before and, also, from the other side, if you

24  will, from the fact that the government may have a different

25  view of her role that may come out as relevant conduct and the

Plea

1    like.  But -- so I leave it at that.  Yes.

2            THE COURT:  OK.  The important thing is this.  There

3    is a disjuncture, as I see it, between what was proffered to me

4    as the offense conduct at the initial conference and the

5    conduct that is necessary to make out the discrete crime to

6    which the defendant is pleading.

7            Assuming that the government sticks to its view as

8    proffered at the initial conference of what the offense conduct

9    was, it is plausible that the government or the Court, or both,

10   would regard it as viable that a sentence ought to be above the

11   guideline range here.  I'm not in any way saying anything other

12   than I'm spotting that as an issue; that is all I am doing.

13   But I just want to make sure that your client is on notice of

14   that possibility given the proffers I received about MS-13 and

15   murder.

16           MR. BELL:  Well, my client is not involved in murder,

17   Judge.

18           THE COURT:  I appreciate that, but a proffer from the

19   government at the last conference was that the defendant was

20   aware of what was being facilitated by facilitating MS-13.

21   That is not substantially captured by the guideline calculation

22   here.  There may be other dimensions of the conduct here that

23   are not captured, and I don't want there to be any surprise if

24   later on that becomes part of the government's sentencing

25   narrative and I take that seriously as an aggravating factor.

Ja7drivp
Plea

1    MR. BELL:  Well, Judge, I don't know if we want to get

2    into this particular fight at this point.  I do not believe

3    that my client was part of or that she knew that someone was

4    murdered or the like.  So I want to make I guess the record

5    clear on that point.

6    THE COURT:  Look, I fully respect and understand that.

7    The government's proffer at the bail hearing and at the initial

8    conference is that your client knew the nature of the

9    organization that she was a participant in and understood what

10   was being facilitated.  I have no idea what the facts are.  It

11   may be that there is a profound factual difference among you.

12   It may be that the government has changed its mind.  But if the

13   government persists in that view and seeks to put before the

14   Court facts along those lines at sentencing, any court would

15   have to seriously ask the question does the guideline range

16   capture that conduct or is it insufficient to capture it.  So

17   without prejudging the issue, I just want to make sure a

18   hundred percent sure that your client is on notice of that

19   possible scenario.

20   MR. BELL:  Judge, as I mentioned, I always tell my

21   clients -- and this one is no different -- that the court has

22   wide latitude to make determinations of what a sentence will

23   be.  If we get to the point where we believe that a fact comes

24   up at sentencing either through the PSR or through argument and

25   it would lead to other hearings or the like, then I am well

Plea

1   prepared to do that as well.  Because I, too, even though the

2   government may have its view from a position where they are

3   looking to have an enhanced sentencing guideline, my position

4   would be that I believe I have factors that I would think are

5   as much warranting a below-guidelines' sentence.

6           THE COURT:  I appreciate that.  I am merely covering

7   the worst-case scenario for your client, which is that the

8   facts established, if that's what it took, are along the lines

9   of what was earlier proffered, and there is a view either from

10  the government, the Court, or both that an above-guidelines'

11  sentence is warranted as a matter of variance.  I just want to

12  make sure your client knows that that is a possibility.  That

13  is the only question I've got.

14          MR. BELL:  That is very fair, Judge.  As I indicated,

15  I believe she understands it.

16          But with her sitting here and with the Court

17  highlighting that fact, I also want her to hear me say that I

18  believe that there is much to be gained from mitigation in her

19  particular case that would warrant a variance opposite that

20  may --

21          THE COURT:  I have no idea that the government is on

22  notice of that as a possibility that could run to a

23  below-guideline sentence.

24          My concern is that Ms. Rivas, who is not a regular

25  player in sentencings here, may not be aware of the spectrum of

Plea

1    possibilities here, and I wanted to make specifically sure she

2    is aware of this.

3              MR. BELL:  Yes, Judge.  I have had that

4    conversation --

5              THE COURT:  OK.

6              MR. BELL:  -- and I believe she was aware of that.

7              THE COURT:  Very good.  Ms. Sassoon, I saw you rising

8    a couple of times.

9              MS. SASSOON:  Yes, your Honor.  In light of this

10   question and what's been said, I just wanted to make a record

11   about something pertaining to the plea discussion.  Obviously

12   the agreement here is the full agreement between the parties,

13   but there was some discussion during plea negotiations about

14   what enhancements did or did not apply.  Some of what you have

15   alluded to are things that are not amenable to a sentencing

16   enhancement with respect to extortion.  But one enhancement

17   that was discussed and contemplated was an enhancement with

18   respect to actual bodily injury, which is not ultimately

19   contained in this plea, although I informed defense counsel

20   that we would nonetheless be putting before the Court that

21   individuals of MS-13 were beat up for failure to pay dues but

22   we would not be in a position to prove up the exact nature of

23   those injuries such that we could establish that guideline with

24   certainty.  So, that's not in the plea, but we will be putting

25   before the Court facts about individuals suffering beatings.

Ja7drivp
                              Plea

1       THE COURT:  All right.  That's helpful.  So, now, may

2   I ask you, Ms. Sassoon, I took away from our colloquy five or

3   six weeks ago that your view is that Ms. Rivas was broadly

4   aware of the nature of MS-13, including the fact that some of

5   what MS-13 did was to take lives, and that she was aware of

6   that at the time of the conduct alleged in the Indictment.  Is

7   that still the government's view?

8       MS. SASSOON:  Yes.

9       THE COURT:  OK.  And I take it that is something that

10  you might be putting before me or, if controverted, attempting

11  to prove in connection with sentencing?

12      MS. SASSOON:  Yes, your Honor.

13      THE COURT:  You might not but you are reserving the

14  right?

15      MS. SASSOON:  Yes, an I don't know exactly the nature

16  of that evidence.  I think we would have a good argument based

17  on circumstantial and inferential evidence of that, given what

18  we all know about MS-13 and the fact that she was a full-blown

19  participant in the gang, but we would likely have evidence

20  beyond that as well.

21      THE COURT:  OK.  Look, I'm not doing anything other

22  than just making sure that there is transparency for all

23  concerned, because it is relatively unusual that there is as

24  big a delta between the factual proffer and initial conference

25  and the specific count that the defendant is pleading guilty

Ja7drivp
Plea

1    to.  It leapt out at me as a situation that called on me to

2    assure full awareness on the defendant's behalf.

3              MS. SASSOON:  Yes, your Honor.

4              THE COURT:  All right.  Mr. Bell, anything further?

5              MR. BELL:  Just on that point of what she knew and

6    whether or not she had a broad understanding of what MS-13 did

7    or what they did not do.  This is, to my understanding, a

8    transnational organization that has been alleged to be part of

9    a lot of different sort of allegations.

10             THE COURT:  Right.

11             MR. BELL:  Both somewhere and in the United States.  I

12   take it very seriously when there is an allegation that my

13   client knew -- in sort of the vacuum that we stand here, that

14   she knew about X, Y, Z.  I have not been given that information

15   as I stand here about what she was alleged to have known and

16   when she was alleged to have known that.  So I stand here a

17   little bit concerned that now we are in this position where the

18   government and the Court are asking what she allegedly knew.

19   Because to be very candid, I have had very little discovery on

20   these issues, especially as the Court asks about homicides or

21   about injuries and the like, that to now leave it up to some

22   PSR, the government's view without --

23             THE COURT:  It is not going to be ever up to the PSR

24   or the government's view, it is ultimately up to the Court

25   based on reliable fact finding.  The government may or may not

Plea

1   assert, based on what it believes the evidence shows, any of

2   these things.  If they do, you will have an opportunity to

3   combat that, and you will be entitled to discovery on that

4   point before any <u>Fatico</u> hearing would ensue.  I don't know if

5   we're going to go there.  I was merely trying to make sure your

6   client was on notice of the possible scenario, and I certainly

7   wasn't trying to nudge Ms. Sassoon to pursue that route.  I was

8   merely trying to issue a spot.

9        MR. BELL:  Fair enough, Judge, but I also stand to

10  make these points because my client and I, based on

11  conversations I have had with the government and our

12  understanding, as Ms. Sassoon has said, we have had a

13  significant amount of conversations in these plea negotiations

14  in which I think that we are very clear, or at least I was very

15  clear about what she was pleading guilty to and what she was

16  not pleading guilty to.  And for that sort of conversation to

17  be had again now in front of my client, I would imagine that

18  that sort of conversation would make her -- or particularly

19  make her concerned because I have had certain conversations

20  with my client based on my conversation with the client.

21        So it has been brought up, Judge.  It was not my

22  intention, of course, to have this conversation.  I was hoping,

23  of course, that it would happen.

24        THE COURT:  That's fine.  Look, I'm not here to

25  scuttle a plea.  I'm here to make sure that the concept of

Ja7drivp

1  relevant conduct is something that you've made your client

2  aware of –– you say you have –– and that it is a possibility

3  that the government may allege facts outside the scope of those

4  necessary to prove up this count that would, if established,

5  count as relevant conduct.  It sounded to me a moment ago that

6  you have had that conversation with your client and she is

7  aware of it.  I'm prepared to proceed with the proceeding here.

8  If you feel that you need more time to speak with your client,

9  be my guest.

10      MR. BELL:  I guess my only point, Judge, is that there

11  is a vast valley, if you will, between what the government

12  indicated is for injury as a result of something and homicide.

13  So when the Court brought up this issue of "homicide," I have

14  never had a conversation with the government regarding my

15  client's complicity or knowledge of a homicide.

16      THE COURT:  Sorry.  Complicity and knowledge are

17  completely different things here.  The point that I was

18  making –– and Ms. Sassoon never proffered at the initial

19  conference that your client had some hand in a homicide.  The

20  proffer was that your client had a hand in MS-13 and that she

21  understood what MS-13 was about, and its objectives included,

22  among other things, homicides.  That's the sum and total

23  substance of what I took away from the government's proffer at

24  the bail hearing, and, as such, I wanted to make sure that you

25  were aware that the government may factually make the same

Ja7drivp
Plea

1   allegation in connection with sentencing.  And, if

2   controverted, that might be something that we need to have a

3   <u>Fatico</u> hearing on, and perhaps you would argue to me that it is

4   not relevant conduct and perhaps Ms. Sassoon would argue that

5   it is.  But one scenario is that the Court would agree that, if

6   established, that fact, awareness that the organization that

7   she was assisting engaged in homicides, was an aggravating and

8   relevant fact.  I just want to make sure that you and she are

9   on notice that that is among the routes this could go.

10          I don't think there is anything more I can say.  If

11  you want time with her, we can put over the plea until later

12  today, we can put it over to another day, or we could go to

13  trial.  I am not putting a thumb on the scale but I don't want

14  surprise.  That's why I raised this issue.

15          MR. BELL:  Thank you, Judge.  I just want to make

16  sure -- I just want a moment to make sure that after having

17  this sort of conversation in this manner, that my client

18  doesn't have any questions.  So if I could just have a few --

19          THE COURT:  Yes, go ahead.

20          (Pause)

21          MR. BELL:  Thank you for the time.  We are ready to go

22  forward.

23          THE COURT:  You are ready to proceed, OK.

24          I will ask Ms. Rivas in the course of the plea

25  proceeding a question or two along the lines that I just

Ja7drivp
Plea

1  covered with you.  OK?

2       MR. BELL:  Yes, your Honor.

3       THE COURT:  All right.

4       So, Ms. Rivas, before I accept your guilty plea, I am

5  going to ask you certain questions so that I can establish to

6  my satisfaction that you wish to plead guilty because you are

7  guilty and not for some other reason.  If you don't understand

8  any of my questions or you would like a further opportunity to

9  consult with Mr. Bell, will you please let me know?

10       THE DEFENDANT:  OK.

11       THE COURT:  All right.  Mr. Smallman, would you kindly

12  place the defendant under oath?

13       THE CLERK:  Sure.

14       Please rise and raise your right hand.

15       (The defendant was sworn through the interpreter)

16       THE COURT:  You may be seated.

17       Mr. Bell, would you just kindly move the microphone a

18  little closer to your client.  Thank you.

19       Ms. Rivas, do you understand that you are now under

20  oath, and that if you answer any of my questions falsely, your

21  answers to my questions may be used against you in another

22  prosecution for perjury?

23       THE DEFENDANT:  Yes.

24       THE COURT:  What is your full name?

25       THE DEFENDANT:  Kelly Mary Rivas.

                              Plea

1              THE COURT:  How old are you?

2              THE DEFENDANT:  32.

3              THE COURT:  How far did you go in school?

4              THE DEFENDANT:  Second year of college.

5              THE COURT:  Where was that?

6              THE DEFENDANT:  I studied at Mid Tech.

7              THE COURT:  In where?

8              THE DEFENDANT:  Mid Tech.

9              THE COURT:  Where is that located?

10             THE DEFENDANT:  In Virginia.

11             THE COURT:  In Virginia.

12             Have you ever been treated or hospitalized for any

13        mental illness?

14             THE DEFENDANT:  No.

15             THE COURT:  Are you now or have you recently been

16        under the care of a doctor or a psychiatrist?

17             THE DEFENDANT:  No.

18             THE COURT:  Have you ever been hospitalized or treated

19        for addiction to any drugs or to alcohol?

20             THE DEFENDANT:  Yes, but years ago.

21             THE COURT:  All right.  Are you past that now?

22             THE DEFENDANT:  That was about seven or eight years

23        ago.

24             THE COURT:  OK.  In the past 24 hours, have you taken

25        any drugs, medicine or pills or drunk any alcoholic beverages?

Ja7drivp

Plea

1          THE DEFENDANT:  No.

2          THE COURT:  Is your mind clear today?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Do you understand what's happening in this

5    proceeding?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Mr. Bell, do you have any doubt as to your

8    client's competence to plead at this time?

9          MR. BELL:  I do not, Judge.

10          THE COURT:  How about you, Ms. Sassoon?

11          MS. SASSOON:  I have no doubts, your Honor.

12          THE COURT:  Based on her responses to my questions and

13    her demeanor as she appears before me, I find that Ms. Rivas is

14    competent to enter a plea of guilty at this time.  Both counsel

15    concur in that result.

16          Ms. Rivas, have you had a sufficient opportunity to

17    discuss your case with your attorney?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Have you had a sufficient opportunity to

20    discuss the particular charge to which you intend to plead

21    guilty, any possible defenses to that charge, and the

22    consequences of entering a plea of guilty?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Are you satisfied with your attorney's

25    representation of you, including in connection with reaching a

1   plea agreement?

2              THE DEFENDANT:  Yes.

3              THE COURT:  I am now going to explain certain

4   constitutional rights that you have.  You will be giving up

5   these rights if you enter a plea of guilty.

6              Under the Constitution and laws of the United States,

7   you are entitled to a speedy and a public trial by a jury on

8   the charge contained in the Indictment.  Do you understand

9   that?

10             THE DEFENDANT:  Yes.

11             THE COURT:  At that trial you would be presumed to be

12  innocent, and the government would be required to prove you

13  guilty by competent evidence and beyond a reasonable doubt

14  before you could be found guilty.  You would not have to prove

15  that you were innocent.  And a jury of twelve people would have

16  to agree unanimously that you were guilty.  Do you understand

17  that?

18             THE DEFENDANT:  Yes.

19             THE COURT:  At that trial and at every stage of your

20  case, you would be entitled to be represented by an attorney,

21  and if you could not afford one, one would be appointed to

22  represent you free of charge.  Do you understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  During a trial, the witnesses for the

25  government would have to come to court and testify in your

Ja7drivp
Plea

1  presence.  Your lawyer could cross-examine the witnesses for

2  the government, object to evidence offered by the government

3  and, if you desired, issue subpoenas, offer evidence, and

4  compel witnesses to testify on your behalf.  Do you understand

5  that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  At a trial, although you would have the

8  right to testify if you chose to do so, you would also have the

9  right not to testify, and no inference or suggestion of guilt

10  could be drawn from the fact that you did not testify, if that

11  was what you chose to do.  Do you understand that?

12          THE DEFENDANT:  Yes.

13          THE COURT:  At trial, the government would have to

14  prove each and every part, or element, of the charge beyond a

15  reasonable doubt for you to be convicted of that charge.  Do

16  you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Do you understand that if you were

19  convicted at a trial, you would have the right to appeal that

20  verdict?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Even now, even right now as you are in the

23  process of entering this guilty plea, you have the right to

24  change your mind, plead not guilty, and go to trial.  Do you

25  understand that?

Ja7drivp

Plea

1        THE DEFENDANT:  Yes.

2        THE COURT:  If you plead guilty and I accept your

3   plea, you will give up your right to a trial and the other

4   rights that I just described, there will be no trial, and I

5   will enter a judgment of guilty and sentence you on the basis

6   of your guilty plea after considering the submissions relating

7   to sentencing that I receive from you, your lawyer and the

8   government, as well as a presentence report prepared by the

9   Probation Department.  Do you understand that?

10        THE DEFENDANT:  Yes.

11        THE COURT:  If you plead guilty, you will also have to

12   give up your right not to incriminate yourself, because I will

13   ask you questions today about what you did in order to satisfy

14   myself that you are guilty as charged.  Do you understand that?

15        THE DEFENDANT:  Yes.

16        THE COURT:  Ms. Rivas, have you received a copy of the

17   Indictment containing the charges against you?

18        THE DEFENDANT:  Yes.

19        THE COURT:  Have you read it?

20        THE DEFENDANT:  Yes.

21        THE COURT:  Has it been translated to you?

22        THE DEFENDANT:  No.

23        THE COURT:  Were you able to read it in English?

24        THE DEFENDANT:  Yes.

25        THE COURT:  OK.  You were able to read English?

Ja7drivp
Plea

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  And have you had a chance to

3    discuss the Indictment with Mr. Bell?

4          THE DEFENDANT:  Yes.

5          THE COURT:  All right.  Do you understand that you are

6    charged in Count One with the crime of conspiring to commit

7    extortion, in violation of the Hobbs Act, Title 18, United

8    States Code, Section 15 -- excuse me, Section 1951(b)(2).  And

9    specifically that as part of that conspiracy, the government

10   alleges that you and your co-conspirators used actual and

11   threatened force, violence and fear to collect and attempt to

12   collect dues from members of MS-13.

13         THE DEFENDANT:  Yes, I understand.

14         THE COURT:  Ms. Sassoon, would you kindly state the

15   elements of that offense?

16         MS. SASSOON:  Yes, your Honor.

17         If the case proceeded to trial, the government would

18   have to prove beyond a reasonable doubt that two or more

19   persons, including the defendant, agreed to commit extortion,

20   that the defendant knowingly and voluntarily joined in that

21   agreement, and, third, that the conspiracy had the possibility

22   or potential to affect interstate commerce.

23         The underlying elements of Hobbs Act extortion are,

24   first, that the defendant obtained property from another person

25   with that person's consent; second, that the defendant induced

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Ja7drivp
                                    Plea

1    that consent by the actual or threatened use of force, violence

2    or fear; third, that the defendant's use of force, violence or

3    fear was wrongful; and, finally, that the defendant obtained

4    the property in a manner that affected interstate or foreign

5    commerce.

6              The government would also have to prove venue by a

7    preponderance of evidence here in the Southern District of New

8    York.

9              THE COURT:  Thank you.

10             Mr. Bell, do you agree with Ms. Sassoon in her

11   recitation of those elements?

12             MR. BELL:  Yes, Judge.

13             THE COURT:  And, Ms. Rivas, did you hear and

14   understand Ms. Sassoon as she just set out the elements of the

15   offense?

16             THE DEFENDANT:  Yes.

17             THE COURT:  And do you understand that if you were to

18   go to trial, the government would have to prove all of those

19   elements beyond a reasonable doubt?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Do you understand that the maximum

22   possible penalty for Count One is 20 years' imprisonment?

23             THE DEFENDANT:  Yes.

24             THE COURT:  The maximum fine for Count One is the

25   greatest of $250,000, twice the gross pecuniary gain derived

Ja7drivp
Plea

1    from the offense or twice the gross pecuniary loss to people

2    other than you resulting from the offense?  Do you understand

3    that?

4                  THE DEFENDANT:  Yes, I understand.

5                  THE COURT:  All right.  Do you understand that for

6    pleading guilty to this offense you would face a maximum term

7    of supervised release of three years?  Do you understand that?

8                  THE DEFENDANT:  Yes.

9                  THE COURT:  All right.  Supervised release means that

10   you will be subject to monitoring when you are released from

11   prison.  There are terms of supervised release with which a

12   person must comply.  If you don't comply with them, you can be

13   returned to prison without a jury trial for all or part of the

14   term of supervised release imposed by the Court.  Under those

15   circumstances, you would not be given any credit towards that

16   term for the time you served in prison as a result of your

17   sentence for this crime, nor would you necessarily be given any

18   credit towards that term for any time you had spent on

19   post-release supervision.

20                  Do you understand that?

21                  THE DEFENDANT:  Yes.

22                  THE COURT:  For pleading guilty to this crime, you

23   will be required to pay a mandatory $100 special assessment.

24   Do you understand that?

25                  THE DEFENDANT:  Yes.

Ja7drivp
Plea

1    THE COURT:  All right.  For pleading guilty to this

2    crime, you may be required to pay restitution to any person

3    injured as a result of your criminal conduct.  Do you

4    understand that?

5    THE DEFENDANT:  Yes.

6    THE COURT:  And for pleading guilty to this crime, you

7    may be compelled to forfeit any and all property constituting

8    and derived from proceeds obtained by your criminal conduct.

9    Do you understand that?

10   THE DEFENDANT:  Yes.

11   THE COURT:  And, counsel, I understand that as part of

12   the agreement in this case, you have presented to me a signed

13   consent preliminary order of forfeiture as to certain specific

14   property which the parties agree are properly forfeited.

15   Is that correct, Ms. Sassoon?

16   MS. SASSOON:  Yes, your Honor.

17   THE COURT:  All right.  Ms. Rivas, is this your

18   signature on the order of forfeiture?

19   THE DEFENDANT:  Yes.

20   THE COURT:  All right.  And, Mr. Bell and Ms. Sassoon,

21   those are your respective signatures as well?

22   MS. SASSOON:  Yes.

23   MR. BELL:  Yes, Judge.

24   THE COURT:  All right.  I am executing right now the

25   order of forfeiture, which is in good order.

Ja7drivp
Plea

1          Ms. Rivas, do you understand that if I accept your

2    guilty plea and adjudge you guilty, that may deprive you of

3    valuable civil rights such as the right to vote, the right to

4    hold public office, the right to serve on a jury, and the right

5    to possess any kind of firearm?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Are you a United States citizen?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Now, under current law there are

10   Sentencing Guidelines as well as other factors set forth in the

11   sentencing statutes that judges must consider in determining

12   your sentence.  Do you understand that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Have you spoken with Mr. Bell about the

15   Sentencing Guidelines and those other factors?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Do you understand that the Court will not

18   be able to determine the guideline range that will form one

19   part of my determination what a reasonable sentence will be in

20   your case until after a presentence report has been prepared

21   and until you and until after you and your attorney and the

22   government all have had the chance to challenge any of the

23   facts reported in that presentence report prepared by the

24   Probation Department?  Do you understand that?

25         THE DEFENDANT:  Yes.

Ja7drivp
Plea

1      THE COURT:  Do you understand that even though the

2 parties in the plea agreement have agreed that the Sentencing

3 Guidelines call for a sentence of between 33 and 41 months'

4 imprisonment, the parties' agreement as to what the Sentencing

5 Guidelines recommend is not binding on the Probation Department

6 and it is not binding upon the Court?

7      THE DEFENDANT:  Yes.

8      THE COURT:  Do you understand that even after the

9 Court has determined what guideline range applies to your case,

10 the Court has the discretion under the current law to impose a

11 sentence that is higher or lower than the one recommended by

12 the Sentencing Guidelines?

13      THE DEFENDANT:  Yes, I understand.

14      THE COURT:  And were you listening when I had the

15 conversation with Mr. Bell a little earlier on about the

16 possibility that the Court might impose a sentence above the

17 guideline range or below the guideline range, depending on what

18 the facts show?  You understand that?

19      THE DEFENDANT:  Yes, I understand.

20      THE COURT:  Do you understand that one possibility is

21 that I will be persuaded that the facts recommend a sentence

22 below the guideline range?

23      THE DEFENDANT:  Yes, I understand.

24      THE COURT:  And do you understand that another

25 possibility is that I will be persuaded that the facts support

Ja7drivp
Plea

1    a sentence within the guideline range?

2             THE DEFENDANT:  Yes, I understand.

3             THE COURT:  And do you understand that another

4    possibility is that I will conclude that the facts warrant a

5    sentence above the guideline range?

6             THE DEFENDANT:  Yes, I understand.

7             THE COURT:  All right.  Do you understand that if your

8    attorney or anyone else has attempted to predict what your

9    sentence will be, their prediction could be wrong?  No one --

10   not your attorney, not the government's attorney -- no one can

11   give you any assurance of what your sentence will be because

12   I'm going to decide your sentence, and I'm not going to do that

13   now and I really can't do that now.  I'm going to wait until I

14   receive a presentence report prepared by the Probation

15   Department.  I'm going to do my own independent calculation of

16   what the sentencing guidelines recommend.  I'm going to study

17   very carefully what I'm sure will be very thoughtful sentencing

18   submissions by both parties.  I'm going to study as well the

19   presentence report.  Based on all those materials, I'm going

20   to, most of all, determine what a reasonable sentence is for

21   you based on all of the factors contained in the sentencing

22   statute, which is known as Section 3553(a).

23            Do you understand all of that?

24            THE DEFENDANT:  Yes, sir.

25            THE COURT:  Have you discussed these issues and the

Ja7drivp
Plea

1  overall sentencing process with Mr. Bell?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Even if your sentence is different from

4  what your attorney or anyone else has told you it might be,

5  even if it is different from what you expect, even if it is

6  different from the advisory guideline range calculated in your

7  plea agreement with the government, you would still be bound by

8  your guilty plea and you would not be allowed to withdraw your

9  plea of guilty.  Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Has anyone threatened you or anyone else

12  or forced you in any way to plead guilty?

13          THE DEFENDANT:  No.

14          THE COURT:  Counsel earlier indicated that there has

15  been a plea agreement entered into in this case.  Is that

16  correct, Ms. Rivas?

17          THE DEFENDANT:  Yes.

18          THE COURT:  All right.  And, Ms. Sassoon, I see here

19  what is the signature of Michael Gerber, the Chief of the

20  Violent Organized Crime Unit, and the signature of the

21  Assistant United States Attorney Bell.

22          Is that your signature?

23          MS. SASSOON:  It is, your Honor.

24          THE COURT:  OK.  And that is, as well, the signature

25  of Mr. Gerber?

Ja7drivp
Plea

1           MS. SASSOON:  It is.

2           THE COURT:  And, Mr. Bell, is this your signature

3    dated today?

4           MR. BELL:  Yes, Judge.

5           THE COURT:  And, Ms. Rivas, is this your signature

6    dated today?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Ms. Rivas, did you read this agreement

9    before you signed it?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Was it translated to you?

12          THE DEFENDANT:  No.

13          THE COURT:  Did you read it in English?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Are you confident that your English

16   reading skills are up to the challenge of reading and

17   understanding that agreement?

18          THE DEFENDANT:  Yes.

19          THE COURT:  All right.  Did you discuss the agreement

20   with your attorney before you signed it?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Did you believe you understood the

23   agreement at the time you signed it?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Did you willingly sign this agreement?

Ja7drivp
Plea

1           THE DEFENDANT:  Yes.

2           THE COURT:  Did anyone force you to sign the

3  agreement?

4           THE DEFENDANT:  No.

5           THE COURT:  Do you have any agreement with the

6  government about your plea or your sentence that has been

7  omitted, that has been left out of this written agreement?

8           THE DEFENDANT:  I don't understand.

9           THE COURT:  Is there any agreement you have with the

10  government that is not contained in this agreement, that has

11  been left out?

12           MR. BELL:  One moment, Judge.

13           (Pause)

14           Thank you.

15           THE COURT:  OK.  Ms. Rivas.

16           THE DEFENDANT:  Yes.

17           THE COURT:  Do you have any agreement with the

18  government that has been left out, that has been omitted from

19  this agreement?

20           THE DEFENDANT:  No.

21           THE COURT:  All right.  Ms. Sassoon, would you briefly

22  summarize the material terms of the plea agreement?

23           MS. SASSOON:  Yes, your Honor.

24           The plea agreement states that the defendant is

25  pleading guilty to the one count of the Indictment, which is

Ja7drivp
Plea

1   conspiracy to commit extortion.  It lays out the potential

2   penalties, which your Honor reviewed with the defendant already

3   during this proceeding.

4           In the plea agreement, the defendant admits the

5   forfeiture allegation and agrees to forfeit $19,346.

6           The agreement sets out the parties' stipulated

7   guideline range, which includes an enhancement for threats of

8   bodily injury and a three-level enhancement for being a manager

9   or supervisor of the organization.  The defendant also receives

10  acceptance of responsibility points.  And based on a Criminal

11  History Category of I, it sets forth a guidelines' range of 33

12  to 41 months' imprisonment.

13          Under this plea agreement, the parties agree not to

14  seek a departure, but the agreement states that either party

15  can seek a below- or above-guideline sentence.

16          The agreement also contains an appellate waiver which

17  states that if the defendant receives a within or below

18  guidelines' sentence, she is waiving her right to appeal.  But

19  the agreement does set forth that the defendant can still raise

20  Brady claims or ineffective -- sorry, that she waives her

21  right -- let me start over.

22          The defendant waives her right to raise a Brady or

23  Giglio claim, but she preserves the right to raise an

24  ineffective assistance of counsel claim.

25          Those are the primary provisions.

Plea

1          THE COURT:  Thank you, Ms. Sassoon.

2          Mr. Bell, are you an in agreement with Ms. Sassoon's

3   summary of the terms which she covered?

4          MR. BELL:  Yes, Judge.

5          THE COURT:  And, Ms. Rivas, did you hear and

6   understand Ms. Sassoon as she described those terms?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  There is just one that I want to highlight

9   for you.  Do you understand that under the agreement, you are

10  giving up your right to appeal or otherwise challenge your

11  sentence so long as I do not sentence you to more than 41

12  months in prison?

13         THE DEFENDANT:  Yes, I understand.

14         THE COURT:  Has anyone made any promise or done

15  anything other than what's contained in the plea agreement to

16  induce you to plead guilty?

17         THE DEFENDANT:  No.

18         THE COURT:  Has anyone made a promise to you as to

19  what your sentence will be?

20         THE DEFENDANT:  No.

21         THE COURT:  Do you still wish to plead guilty pursuant

22  to this agreement?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Can you now tell me, Ms. Rivas, in your

25  own words what you did that makes you believe you are guilty of

Plea

1    the charge in Count One of the Indictment?

2            THE DEFENDANT:  I am going to read from this piece of

3    paper.  I have it written down.

4            THE COURT:  That is fine.  Before you do, though, let

5    me ask you this.  The piece of paper that is before you, is it

6    something that you have had a chance to review before this

7    moment?

8            THE DEFENDANT:  What is written here is what I spoke

9    to my attorney about, about what I would like to say.

10           THE COURT:  That's fine.  I just want to make sure it

11   is something you've reviewed and are confident it's completely

12   truthful and accurate.

13           Is it completely truthful and accurate?

14           THE DEFENDANT:  Yes.

15           THE COURT:  Go ahead.

16           THE DEFENDANT:  My English is not that good.

17           THE COURT:  You need not speak in English.  You can

18   speak in your native language.

19           The question is just tell me in your own words what

20   you did that makes you believe you are guilty of the charge in

21   the Indictment.

22           THE DEFENDANT:  I am going to try to say it in

23   Spanish.

24           THE COURT:  Thank you.

25           THE DEFENDANT:  From 2013 until September '17,

Ja7drivp
                              Plea

1   approximately, I agreed with other people to threaten one

2   person --

3                   THE INTERPRETER:  The interpreter needs to verify.

4                   (Pause)

5                   To threaten one person of La Mara.

6                   THE COURT:  One person?  I didn't hear the

7   interpreter.

8                   THE DEFENDANT:  To threaten one person of La Mara.

9                   MS. SASSOON:  La Mara Salvatrucha?

10                  THE DEFENDANT:  Yes.

11                  We threatened him with violence.  We frightened him in

12  order to get money from that person.

13                  THE INTERPRETER:  The interpreter needs to verify.

14                  THE DEFENDANT:  From that person.

15                  THE COURT:  Are you done with your response to my

16  question?

17                  THE DEFENDANT:  Yes.

18                  THE COURT:  All right.  Thank you.  I just have a few

19  follow-up questions.

20                  You said you were seeking to get money from this

21  person, is that right?

22                  THE DEFENDANT:  Yes.

23                  THE COURT:  Was that money dues to be paid to MS-13?

24                  THE DEFENDANT:  Yes.

25                  THE COURT:  And were you threatening the person with

Ja7drivp
Plea

1    violence if that person did not pay those dues?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And was it -- did you agree with other

4    people to threaten at least that person with violence as a

5    means of getting dues?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Ms. Sassoon, can you give me a proffer as

8    to the Southern District of New York's connection to this?

9              MS. SASSOON:  Yes, your Honor.

10             If the case proceeded to trial, we would have witness

11   testimony about the defendant traveling through the Southern

12   District of New York in furtherance of this conspiracy and for

13   the purpose of a meeting relating to MS-13 activity.

14             THE COURT:  Thank you.

15             Ms. Rivas, did you hear what Ms. Sassoon just said?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Did you travel through New York as part of

18   the conduct that you and the others agreed upon in connection

19   with threatening somebody to get MS-13 dues?

20             THE DEFENDANT:  (In English) Give me one second.

21             THE COURT:  Yes.

22             (Pause)

23             MR. BELL:  Thank you, Judge.

24             THE DEFENDANT:  Sorry.

25             THE COURT:  Did you travel through New York in

Ja7drivp

1    connection with this conspiracy?

2           THE DEFENDANT:  (In English)  Yes.

3           THE COURT:  And just tell me a little more about what

4    you did, what purpose the travel through New York served?

5           MR. BELL:  One second.

6           THE COURT:  Mm-hmm.

7           (Pause)

8           THE DEFENDANT:  Could you please repeat the question?

9           THE COURT:  What purpose did the travel through New

10   York serve?  Why did you travel through New York?

11          THE DEFENDANT:  I only came here for two days only

12   once.

13          THE COURT:  I'm going to ask you the same question.

14   What purpose did the travel through New York serve?  Not how

15   long the trip was, but how did it relate to the conspiracy that

16   you have been describing to me?

17          THE DEFENDANT:  Actually, nothing.  I only came here

18   for a visit.

19          THE COURT:  Ms. Sassoon, could you proffer more

20   concretely how the travel fit in?

21          MS. SASSOON:  Yes.  And perhaps Ms. Rivas is confused

22   by where in New York we are referring to, so --

23          THE COURT:  Tell me what the facts are and I will

24   formulate a better question.

25          MS. SASSOON:  So the defendant traveled to Long Island

Ja7drivp
Plea

1    for the purpose of an MS-13 meeting, and to get to Long Island,

2    necessarily you have to travel through the Southern District of

3    New York.

4            THE COURT:  OK.  Thank you.  Very helpful.

5            Ms. Rivas, did you travel to Long Island for an MS-13

6    meeting.

7            MR. BELL:  Just a moment, Judge.

8            May I speak with Ms. Sassoon?

9            THE COURT:  Of course.

10           (Pause)

11           MR. BELL:  Just one moment, Judge.

12           THE COURT:  Of course.

13           (Pause)

14           MS. SASSOON:  Your Honor, after conferring with

15   defense counsel, the government would like to make an

16   alternative proffer of another way of establishing venue.

17           THE COURT:  Be my guest.

18           MS. SASSOON:  Which is that the defendant used the

19   proceeds of the extortion to transmit material to other MS-13

20   members within the Southern District.

21           THE COURT:  All right.  Ms. Rivas, did you hear what

22   Ms. Sassoon just said?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Did you do that?

25           THE DEFENDANT:  (In English) Yes, sir.

Ja7drivp
                        Plea

1      THE COURT:  I need you to be a little more

2  descriptive.  I need you to explain to me what you did with the

3  money and how it related to the Southern District of New York.

4  I need to make sure that this is a proper district for this

5  prosecution.

6      THE DEFENDANT:  I bought things that they needed on

7  Amazon.

8      THE COURT:  And did you do that in this district?

9      THE DEFENDANT:  Not exactly but I would send it here.

10     THE COURT:  OK.  So, the dues money that you obtained

11 by threats of violence, you used that money -- you sent that

12 money, then, to people here in this district?

13     THE DEFENDANT:  Yes.

14     THE COURT:  Ms. Sassoon, does that accord with your

15 understanding of the facts?

16     MS. SASSOON:  Yes.  By sending the proceeds, I think

17 what she conveyed is that she sent the proceeds in the form of

18 things purchased on Amazon.

19     THE COURT:  I see.  Very good.

20     Ms. Rivas, did you hear what Ms. Sassoon just said?

21     THE DEFENDANT:  No.

22     THE COURT:  All right.  She said that you used the

23 dues money that you obtained through threats of violence and

24 you bought things on Amazon and sent them into this district,

25 to people in this district.  Is that correct?

Ja7drivp
Plea

1          THE DEFENDANT:  Yes.

2          MS. SASSOON:  And, your Honor, we received records

3    from Amazon that confirm that.

4          THE COURT:  OK.  And, Ms. Sassoon, were the people to

5    whom this was sent in the district, do you understand them to

6    have been associated with MS-13?

7          MS. SASSOON:  Yes, your Honor.

8          THE COURT:  Ms. Rivas, is that correct?

9          THE DEFENDANT:  Yes.

10          THE COURT:  All right.  Do all counsel agree that on

11    this factual proffer, there is a sufficient nexus to this

12    district for the prosecution to proceed, for the plea to be

13    accepted here?

14          MS. SASSOON:  Yes, your Honor.

15          MR. BELL:  Yes, Judge.

16          THE COURT:  And, Ms. Sassoon, I think we may have just

17    covered it, but just to play it absolutely safe, can you

18    proffer to me how the interstate commerce element of the Hobbs

19    Act is satisfied?

20          MS. SASSOON:  Yes, your Honor.  The government would

21    actually satisfy that element by establishing that Ms. Rivas

22    extorted members whose dues came in part from illegal

23    activities, such as the interstate sale of narcotics, and under

24    the case law that would satisfy the interstate nexus.

25          THE COURT:  Mr. Bell, do you agree with that?

                            Plea

 1          MR. BELL:  Yes, your Honor.

 2          THE COURT:  Both factually and legally?

 3          MR. BELL:  Yes, your Honor.

 4          THE COURT:  And, Ms. Rivas, did you hear what

 5    Ms. Sassoon just said?

 6          THE DEFENDANT:  Yes.

 7          THE COURT:  Do you agree with that?

 8          THE DEFENDANT:  Yes.

 9          THE COURT:  All right.  When you did these acts, did

10    you know that what you were doing was wrong, meaning

11    threatening violence as a way of getting MS-13 dues?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Did you know you were committing a crime?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Does government counsel agree that there

16    is a sufficient factual predicate for a guilty plea?

17          MS. SASSOON:  Yes, your Honor.

18          THE COURT:  Does defense counsel?

19          MR. BELL:  Yes, Judge.

20          THE COURT:  Mr. Bell, do you know of any valid defense

21    that would prevail at trial or any reason why your client

22    should not be permitted to plead guilty?

23          MR. BELL:  I do not, Judge.

24          THE COURT:  Ms. Rivas, are you pleading guilty today

25    voluntarily and of your own free will and because you are in

Ja7drivp
Plea

1  fact guilty?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Ms. Sassoon, can you represent that had

4  the case gone to trial, the government had sufficient evidence

5  of each element to establish a conviction?

6          MS. SASSOON:  Yes, your Honor.

7          THE COURT:  Ms. Rivas, because you acknowledge that

8  you are in fact guilty as charged in Count One of the

9  Indictment, because I'm satisfied that you know of your rights,

10  including your right to go to trial, because I'm satisfied that

11  you are aware of the consequences of your plea, including the

12  sentence that may be imposed, and because I find that you are

13  voluntarily pleading guilty, I accept your guilty plea and

14  enter a judgment of guilty on the one count to which you have

15  pled guilty.

16          Now, the next step in your case is going to involve

17  the sentencing process.  I am going to ask you to pay close

18  attention to what I'm about to say.

19          The Probation Department is going to want to interview

20  you in connection with the presentence report that it prepares.

21  If you choose to speak with the Probation Department, please

22  make sure anything you say to them is truthful and accurate.  I

23  read those presentence reports carefully.  And along with the

24  submissions I get from government counsel and defense counsel,

25  they are very important to me in determining what a reasonable

Ja7drivp
Plea

1    sentence is in the particular case.

2           You and Mr. Bell have a right to examine the report

3    and to comment on it at the time of sentencing.  I urge you to

4    read it.  I urge you to discuss it with Mr. Bell before

5    sentencing.  In the event there are any mistakes in the report,

6    please point them out to Mr. Bell so that he can bring them to

7    my attention before sentencing.

8           Will you agree to do that?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Mr. Bell, I take it this is not a case in

11   which you are seeking an expedited sentence?

12          MR. BELL:  No, sir.

13          THE COURT:  All right.  How about Wednesday,

14   January 22nd, at 10 a.m.?

15          MS. SASSOON:  Yes, your Honor.

16          MR. BELL:  At 10 a.m.?

17          THE COURT:  Yes, 10 a.m.  That works?

18          MR. BELL:  Yes, your Honor.

19          THE COURT:  Mr. Bell, you must arrange for your client

20   to be interviewed by the Probation Department within the next

21   two weeks.

22          Government, you should provide your case summary to

23   the Probation Department within the next two weeks.

24          Defense submissions are due two weeks before

25   sentencing.  The government's submission is due one week

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Ja7drivp
Plea

1    before.

2              Is there anything further from the government?

3              MS. SASSOON:  No.  Thank you, your Honor.

4              THE COURT:  All right.  Thank you.

5              Anything further from the defense?

6              MR. BELL:  No.  Thank you, your Honor.

7              THE COURT:  All right.  Be well.  Thank you.

8              We stand adjourned.

9              THE CLERK:  All rise.

10             (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25